**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

THOMAS GOODSON,

                      Plaintiff,

    v.                                                      No. 09-CV-494
                                                                  (GTS/DRH)

DALE ARTUS, Superintendent Clinton
Correctional Facility; SERGEANT JOHN
MENARD, Clinton Correctional Facility;
SERGEANT JOHN SILVER, Clinton
Correctional Facility; CORRECTION OFFICER
JOHN BENNEDETTE,[1] Clinton Correctional
Facility; and CORRECTION OFFICER
"JOHN DOE," Clinton Correctional Facility,[2]

                      Defendants.

---

**APPEARANCES:**                                **OF COUNSEL:**

THOMAS GOODSON
Plaintiff Pro Se
90-T-1254
Great Meadow Correctional Facility
Post Office Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN          MEGAN M. BROWN, ESQ.
Attorney General for the                     Assistant Attorneys General
  State of New York

---

[1] The correct name of defendant Bennedette is Renadette and was incorrectly identified as defendant Bennedette. Defs. Mem. of Law (Dkt. No. 43-5) at 2-3 n.2. This defendant will be referred to as "Renadette" herein.

[2] Defendant Correction Officer "John Doe" has neither appeared nor been served in this action. Fed. R. Civ. P. 4(m) requires that a complaint be served upon a defendant within 120 days after the complaint is filed or the complaint may be dismissed as to any unserved defendant without prejudice. See also N.D.N.Y.L.R. 4.1(b). The complaint here was filed on April 1, 2009. Compl. (Dkt. No. 1). No summons was served upon this defendant and the defendant has not otherwise been identified by Goodson. More than 120 days have passed since the complaint was filed. Accordingly, it is recommended that the complaint be dismissed as to this defendant without prejudice pursuant to Rule 4(m) and Local Rule 4.1(b).

Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[3]

Plaintiff pro se Thomas Goodson ("Goodson"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, five DOCCS employees, violated his constitutional rights under the Eighth Amendment and related state laws. Compl. (Dkt. No. 1). Presently pending is the motion of defendants Superintendent Artus, Menard, and Renadette for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 43. Goodson opposes the motion. Dkt. No. 45. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

### I. Background[4]

The facts are related herein in the light most favorable to Goodson as the non-moving party. See subsection II(A) infra. The events in question occurred during Goodson's incarceration at Clinton Correctional Facility ("Clinton").

---

[3]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[4] Two sets of documents were attached to Goodson's complaint. Dkt. No. 1 at 11-26. As the second set of documents is identical to the first, citations will only be made to the former.

On April 4, 2006, nurse Lashway[5] was being escorted on rounds through Clinton's Special Housing Unit ("SHU")[6] by defendant Menard.  Compl. ¶ 10.  After passing Goodson's cell, Lashway informed Menard that Woodson had exposed himself to her and that she had verbally reprimanded him.  Id. ¶ 10; Goodson Dep. (Dkt. No. 43-3) at 48, 54; Menard Decl. (Dkt. No. 43-4) ¶¶ 6-7.  It was not unusual for SHU inmates to expose themselves to female staff.  Menard Decl. ¶ 9.  Additionally, Goodson had several prior instances of demonstrating this behavior and had been diagnosed as an exhibitionist.  Dkt. No. 1 at 13, 14; Goodson Dep. at 49-51.  While Goodson could have been charged with violating DOCCS rules, Lashway was responsible for, and choose not to, charge Goodson for the incident.  Mendard Decl. ¶ 8.  Goodson stated that Menard approached Goodson's cell and admonished him, though Goodson explained that he was actually urinating when Lashway walked by.  Compl. ¶ 10; Goodson Dep. at 54.  Menard does not recall this.  Mendard Decl. ¶¶ 12-13.

Approximately an hour later, Menard returned to Goodson's cell and informed him that he had a physical therapy appointment later that morning.  Compl. ¶ 11.  Goodson was receiving physical therapy for an injury to his neck.  Goodson Dep. at 8, 23.  Approximately forty-five minutes later, Menard returned with defendants Silver and Renadette to escort Goodson to the appointment.  Compl. ¶ 12; Goodson Decl. at 28.  When Goodson exited

---

[5] In the complaint, Nurse Lashway's name was incorrectly spelled as Nurse Lashaway.

[6] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

3

his cell, Menard threatened Goodson in the presence of the other two defendants, saying that if another incident occurred where Goodson exposed himself Menard would personally assault Goodson.  Compl. ¶ 13; Goodson Dep. at 48-49.  These threats were also witnessed by the inmate who resided in the cell next to Goodson.  Bartolo Aff. (Dkt. No. 1 at 16-17) ¶ 5.  Menard denies making such threats.  Menard Decl. ¶¶ 12-13.  Goodson was denied an opportunity to explain and was immediately escorted off the unit.  Compl. ¶ 14.

Upon arriving at the hallway below the hospital, Silver informed Renadette that he needed to stop by his office with Goodson prior to proceeding to the hospital and turned off onto another corridor.  Compl. ¶ 15; Goodson Decl. at 8, 32-33.  Siler directed Renadette to await their return at the end of the hall and pulled Goodson into an employee bathroom.  Compl. ¶ 15, Goodson Decl. at 8-9.  While in the bathroom, Goodson states that Silver and another unidentified defendant forced him to perform oral sex on Silver.  Compl. ¶¶ 16-20; Goodson Decl. at 9-10, 35-48, 57-62.  Silver threatened Goodson before leaving the bathroom that if he told anyone, Silver would kill him and stage his death as a suicide.  Compl. ¶¶ 20-21; Goodson Decl. at 10.  Silver also indicated that these "sessions" would continue in the future.  Compl. ¶ 21 Goodson Decl. at 10-11, 62-63.

Goodson left the bathroom, returned to Renadette, and proceeded to the physical therapy appointment acting as if everything was normal.  Compl. ¶ 22; Goodson Dep. at 64, 66.  When the therapy session was complete, Goodson was escorted back to his cell and Renadette informed Menard that Goodson had two therapy sessions that day, one with physical therapy and one with Silver.  Compl. ¶ 24; Goodson Dep. at 68-69.  Goodson filed complaints against the defendants and he was transferred to another facility.  Dkt. No. 1 at 14; Goodson Decl. at 12, 70-74.  This action followed.

## II.  Discussion

Goodson alleges that defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment and failing to protect him from the sexual assault. Liberally construing the complaint, Goodson also alleges that these defendants engaged in a conspiracy to deprive him of said rights.  Artus, Menard, and Renadette move for dismissal claiming that Goodson has failed to state a claim or allege their personal involvement, the court lacks subject matter jurisdiction to decide the state law matters, Goodson's conspiracy theory lacks merit, and defendants are shielded by qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some

5

doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

### B.  Personal Involvement[7]

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

---

[7] Defendants argue that neither Menard nor Renadette were personally involved in the alleged constitutional violations against Goodson.  Defs. Memorandum of Law at 5-8.  It appears, however, that defendants contend in this regard that Goodson's Eighth Amendment failure to protect and conspiracy claims are meritless.  Therefore, those contentions are discussed infra in sections (II)(C)(2) and (D)(2).

6

supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

    (1) [T]he defendant participated directly in the alleged constitutional violation;

    (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

    (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

    (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

    (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[8]

    The gravamen of Goodson's complaint against defendant Artus, the Superintendent of Clinton, is that Artus failed to exercise proper supervision of DOCS employees who violated Goodson's rights. Goodson Dep. at 77. However, a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement.

---

[8] Various courts in the Second Circuit have considered how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. See McCarroll v. Fed. Bureau of Prisons, No. 08-CV-1343 (DNH/GHL), 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (noting that although the Second Circuit has not yet addressed Iqbal's impact on the five Colon factors, several district courts have done so); Kleehammer v. Monore County, 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (holding that Iqbal did not eliminate Colon's personal involvement standard).

Wright, 21 F.3d at 501. At best, it appears that Goodson is attempting to claim personal involvement because Artus may have received a grievance to which he never responded. However, receiving grievances, without more, is insufficient to establish personal involvement as there exists no allegation or evidence that Artus took any action. See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted).

Accordingly, defendants' motion should be granted on this ground as to Artus.

### C. Eighth Amendment

The Second Circuit has held "that severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotation marks and citations omitted). As "sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose," the act of abusing an inmate indicates that the prison official perpetrating the abuse can "have a sufficiently culpable state of mind to violate the prisoner's constitutional rights." Id. (citations omitted). However, in this case, the motion is on behalf of Menard and Renadette, who did not personally abuse Goodson, but who, according to Goodson, failed to protect him from Silver's actions.

8

Eighth Amendment obligations also include the duty to protect prisoners from other known harms. Farmer v. Brennan, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 832. Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)); see also Matthews, 36 F. Supp. 2d at 124 (same).

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). In order to state a cognizable failure to protect claim, (1) "the inmate [must be] incarcerated under conditions imposing a substantial risk of serious harm," and (2) the prison official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Matthews, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999) (citing Farmer, 511 U.S. at 834) (internal citations and quotation marks omitted).

This may be demonstrated by defendants knowing that "there was [some]thing about [Goodson], as distinguished from the prison population at large, that the . . . [d]efendants should have known placed [Goodson] at special risk of sexual assault by a corrections officer." Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 164 (S.D.N.Y. 2009) (citations

9

omitted). Additionally, this may be shown if defendants "knew or should have known that . . . corrections officers . . . were prone to committing sexual assault against inmates, or, more generally, that DOC[C]S officials tolerated or permitted illegal sexual assault against inmates." Id. (citations omitted) .

### 1. Menard

Defendants contend that Goodson's complaints against Menard and Renadette are meritless. Even construing the facts in the light most favorable to Goodson, he has failed to allege facts sufficient to believe that Menard knew of, or disregarded, the danger Goodson was facing. Menard approached Goodson in response to his alleged actions in exposing himself to the nurse. Menard's threats, alone, are insufficient to state a constitutional claim. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983."). The record is devoid of any other evidence that Menard knew or should have known that Goodson was at risk of being assaulted by Silver or that Silver was prone to committing sexual assaults against inmates.

Accordingly, defendants' motion as to this claim should be granted on this ground as to Menard.

**2. Renadette**

Goodson contends that Renadette's failure to continue to escort him directly to the physical therapy session, allowing Silver to take Goodson down a different hallway and making subsequent statements to Menard about Silver's personal therapy session with Goodson prior to his physical therapy appointment all evidence his failure to protect Goodson.  Dkt. No. 45 at 6-7.  Viewing the facts in the light most favorable to Goodson, these allegations are sufficient to raise a question of material fact.

Renadette's compliance with Silver's order to stay at the end of the hallway while Silver made a detour with Goodson, combined with Renadette's subsequent statements to Menard indicate that Renadette was aware that something was going to occur while Silver was left alone with Goodson.  These subsequent statements serve as evidence of Renadette's knowledge of Silver's proclivity to act outside the scope of his professional duties.  The exact circumstances which Goodson was going to experience are immaterial. All that must be shown is that Renadette knew or should have known that leaving Goodson alone with Silver would expose Goodson to a harm which he otherwise could have prevented.

Accordingly, defendants' motion as to Renadette on this claim should be denied.

**D. Conspiracy**

In order to support a claim for conspiracy pursuant to § 1983, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act

11

done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." Anilao v. Spota, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

### 1. Menard

In this case, Goodson has failed to allege facts sufficient to support a conspiracy claim with respect to Menard. Goodson's contentions fail to demonstrate that Menard entered into an agreement with the other two defendants to achieve the unlawful end of him being sexually assaulted. The pleadings are lacking any facts showing an agreement, express or implied, between Menard and the others. While Menard may have threatened Goodson, these threats were physical in nature, in response to the earlier incident with the nurse, and expressed only to Goodson. Menard's threats came without any additional support or amplification from either Renadette or Silver, who were both standing by.

As the facts fail to support the existence of an agreement between Menard and any others, defendants' motion in this regard should be granted as to Menard on this claim.

### 2. Renadette

Conversely, viewing the evidence in the light most favorable to Goodson, there exists material questions of fact whether an implicit agreement existed between Renadette and Silver and whether Renadette was aware or compliant with the alleged abuse that Goodson suffered. Renadette's actions of leaving Silver alone with Goodson, combined with Renadette's subsequent statements to Menard could demonstrate an implied agreement between the two whereupon Renadette was aware of Silver's ulterior motives in harming Goodson and allowed it to happen by remaining at the other end of the hall while Silver brought Goodson to the bathroom. The facts, viewed in the light most favorable to Goodson, represent more than vague and conclusory allegations.

Accordingly, defendants' motion on this ground should be denied as to Renadette on this claim.

### E. State Law Claims

Goodson's complaint also asserts that defendants violated various state laws, however these claims fail as a matter of law. New York Correction Law § 24 provides that

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

13

> 2. Any claim for damages arising out of any act done or the failure
> to perform any act within the scope of the employment and in the
> duties of any officer or employee of the department shall be
> brought and maintained in the court of claims as a claim against
> the state.

"Section 24 thus precludes claims against corrections officers brought against them in any court in their personal capacities arising out of the discharge of their duties." Crump v. Ekpe, No. 07-CV-1331, 2010 WL 502762, at *18 (N.D.N.Y. Feb. 8, 2010) (citations omitted) (Dkt. No. 43-6). Because a federal court applying pendent jurisdiction is forced to apply state substantive law to a state claim, this would result in inmates being prohibited from advancing such pendent claims along with their federal claims in federal court. Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996).

> In 2009, the United States Supreme Court held that § 24 is
> unconstitutional to the extent that it precludes inmates from
> pursuing § 1983 actions. However, at least two judges in this
> District have observed that because Haywood's focus is on
> concerns about civil rights claims and the Supremacy Clause, the
> decision does not affect the question of whether this Court has
> proper jurisdiction to hear a pendent state law claim.

Tafari v. McCarthy, 714 F. Supp. 2d 317, 384 (N.D.N.Y. 2010) (internal quotation marks and citations omitted). Accordingly, this district has continued to dismiss state law pendent claims against defendants acting within their personal capacities, discharging their duties, pursuant to the preclusive effects of § 24. See e.g., Crumpe, 2010 WL 502762, at *18.

When determining whether actions fall within the scope of the defendants employment, courts have considered:

> the connection between the time, place and occasion for the act;
> the history of the relationship between employer and employee as
> spelled out in actual practice; whether the act is one commonly
> done by any employee; the extent of the departure from normal
> methods of performance; and whether the specific act was one that

14

the employer could reasonably have anticipated.

Degrafinreid v. Ricks, 452 F. Supp. 2d 328, 333 (S.D.N.Y. 2006) (citations omitted).  Thus, "an employee will be considered within the scope of his employment so long as he is discharging his duties no matter how irregularly, or with what disregard of instructions." Id. (citations omitted).  Even in cases where alleged excessive force was used in frisking or searching a cell, or where negligence was alleged in the provision of medical care, such actions are still defined to be within an employee's duties.  Id. (citations omitted); see also Crump, 2010 WL 502762, at *18 (listing DOCCS employee duties to include "determinations to administratively confine plaintiff to SHU, to issue a misbehavior report, the conduct of the disciplinary hearing, and the determination that plaintiff was guilty of the charges alleged," and explaining that while actions "exceeding the scope of the corrections officer's authority . . . ." may give rise to a constitutional violation, such actions are still precluded pursuant to § 24).

With respect to the defendants making the present motion, all of their purported actions fall within their assigned duties.  Menard's action, or lack there or, resulting from him turning Goodson over to be escorted to physical therapy and then receiving him back into his cell upon his return all fell within his assigned duties as a sergeant.  Thus, § 24 prohibits the advancement of any pendent state law claims.  Similarly, Renadette was tasked with escorting Goodson to and from physical therapy, which he completed.  The fact that he obeyed his commanding officers instructions to wait at the end of the hallway for them to return did not constitute a deviation from his duties and obligations as a corrections officer.  While his inaction may be cited as the alleged cause of a constitutional violation, it is insufficient to remove this action from the bar of § 24.

Accordingly, defendants' motion should be granted on this ground as to Goodson's state law claims agains the moving defendants.

### F. Qualified Immunity

Finally, defendants claim that even if Goodson's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning Goodson's claims against Artus, as he was not personally involved in the alleged constitutional violation, or Menard,

as the constitutional claims against him were meritless.

As discussed <u>supra</u>, the Second Circuit has held that sexual assaults do not serve a penological purpose and that inmates have an Eighth Amendment right to be protected from foreseeable harms. The focus of the analysis as to Renadette is whether it was reasonable for him to believe that his actions did not violate the law. This analysis depends upon Renadette's knowledge of Silver's allegedly intended actions. For the reasons discussed above, viewing the evidence in the light most favorable to Goodson, a question of material fact remains on this issue.

Accordingly, defendants' motion on this ground should be granted in the alternative as to Artus and Menard on this ground and denied as to Renadette.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 43) be:

1. **GRANTED** as to all claims against defendants Artus and Menard and judgment should be granted to these two defendants on all claims against them;

2. **GRANTED** as to all state law claims against Renadette and judgment should be entered for him as to all such claims; and

3. **DENIED** as to all other claims against Renadette.[9]

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen

---

[9]Defendants' motion did not include Silver among the movants and, therefore, all claims against him remain as well.

17

(14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 15, 2012
       Albany, New York

_David R. Homer_
David R. Homer
U.S. Magistrate Judge