UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS GOODSON,

                              Plaintiff,              9:09-CV-0494
                                                     (GTS/DRH)
v.

"JOHN" SILVER, Sergeant, Clinton Corr. Facility;
and "JOHN" RENADETTE, Corr. Officer, Clinton
Corr. Facility,

                              Defendants.

_____

APPEARANCES:                               OF COUNSEL:

HISCOCK & BARCLAY LLP                       BRITTANY E. AUNGIER, ESQ.
  Pro Bono Trial Counsel for Plaintiff      GABRIEL M. NUGENT, ESQ.
One Park Place
300 South State Street
Syracuse, NY 13202-2078

HON. ERIC T. SCHNEIDERMAN                    CATHY Y. SHEEHAN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

        The trial in this prisoner civil rights action, filed *pro se* by Thomas Goodson ("Plaintiff")

pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on

September 18, 2012, regarding the affirmative defense, asserted by Sergeant "John" Silver and

Corrections Officer "John" Renadette ("Defendants"), that Plaintiff failed to exhaust his

available administrative remedies, as required by the Prison Litigation Reform Act, before filing

this action on March 12, 2009.  At the hearing, documentary evidence was admitted, and

testimony was taken.  At the conclusion of the hearing, the undersigned dismissed Plaintiff's

action for failure to exhaust his available administrative remedies, and indicated that a written

decision would follow.  This is that written decision.

## I.   RELEVANT BACKGROUND

Through their pre-hearing briefs and hearing summation, the parties have demonstrated

an accurate understanding of the claims and factual allegations asserted in Plaintiff's Complaint,

the relevant portions of the procedural history of this action, and the legal and factual issues

relevant to the hearing.  As a result, the Court will not repeat that information in its entirety in

this Decision and Order, which is intended primarily for the review of the parties.  Rather, the

Court will merely state as follows.

Plaintiff dated, and thus filed, his Complaint in this action on March 12, 2009.  (Dkt. No.

1.)  Construed with the utmost of special liberality, that portion of Plaintiff's Complaint

surviving the Court's Decision and Order of March 27, 2012, alleges that on April 4, 2006, at

Clinton Correctional Facility ("Clinton C.F."), the two above-captioned Defendants violated his

constitutional rights in the following manner: (1) Defendant Silver sexually assaulted Plaintiff in

a bathroom while escorting him to a physical therapy appointment, in violation of the Eighth

Amendment; and (2) Defendant Renadette failed to protect Plaintiff from the alleged sexual

assault, by knowing of Defendant Menard's physical threat against Plaintiff, by having reason to

know that Defendant Silver intended to harm Plaintiff, but failing to accompany Plaintiff into the

bathroom during his transport to physical therapy, in violation of the Eighth Amendment.  (*See*

*generally* Dkt. Nos. 1, 49.)

On May 11, 2012, Plaintiff was appointed pro bono trial counsel.  (Dkt. No. 50.)  On August 7, 2012, Defendants filed a letter-motion requesting a pre-trial evidentiary hearing regarding Plaintiff's asserted failure to exhaust his available administrative remedies before filing this action.  (Dkt. No. 57.)  On August 10, 2012, the Court granted that request.  (Text Order filed Aug. 10, 2012.)

Generally, in their pre-hearing brief, and during their hearing summation, Defendants argued as follows: (1) the Supreme Court's decision in *Woordford v. Ngo*, 548 U.S. 81, 92 - 93 (2006), required Plaintiff to have "properly" exhausted his available administrative remedies before filing this action (i.e., complete the administrative review process in accordance with the applicable procedural rules, including deadlines); and (2) Plaintiff did not do so in this case, in large part because an investigation by the New York State Office of the Inspector General does not suffice to exhaust administrative remedies without an appeal to the New York State Department of Corrections and Community Supervision ("DOCCS") Central Office Review Committee ("CORC").  (Dkt. No. 76, at 4-6 [attaching pages "4" through "6" of Defs.' Pre-Hrg. Brief]; Hrg. Transcript, at 122-129.)

Generally, in his pre-hearing brief, and during their hearing summation, Plaintiff argued that, pursuant to the third part of the three-part inquiry established by the Second Circuit for exhaustion of administrative remedies, special circumstances exist justifying Plaintiff's failure to exhaust his available administrative remedies before filing this action, due to the following: (1) the purported fact that (due to fear of reprisal) his speech was chilled, or at least he was hopelessly distracted, while he was at Clinton C.F. following the alleged assault; (2) the purported fact that his mail was interfered during the two days following the alleged assault; (3)

the purported fact that, procedurally, he could not file a formal grievance at Clinton C.F. after he was transferred from there; (4) the fact that his hand-delivered letter to Maureen Bosco, which was brought to the attention of Clinton C.F. Deputy Superintendent of Security Jeff Tedford and referred by him to the IG, was effectively treated as a harassment grievance; (5) the purported fact that an appeal to CORC would have been futile under the circumstances because CORC would merely have "rubber stamped" the IG's conclusion that Plaintiff's claims were unsubstantiated; and (6) the purported fact that the IG investigation served the same purpose as the grievance process.  (Dkt. No. 68, at 5-8  [attaching pages "3" through "6" of Plf.'s Pre-Hrg. Brief]; Hrg. Transcript, at 129-131.)

Generally, at the hearing, documentary evidence was admitted, and testimony was taken of Plaintiff as well as Defendants' five witnesses (Grievance Sergeant Scott McLean, Grievance Supervisor Christine Gregory, Legal Office Liaison Tammy Irwin, Inmate Grievance Program Director Karen Bellamy, and Inspector General Senior Investigator Anthony Misercola).  (*See generally* Hrg. Transcript and Exs.)  While various facts were of course were disputed, certain facts were uncontroverted, including the following: (1) before the occurrence of the assault alleged in this action, Plaintiff had a good understanding of the DOCCS grievance process, and had some experience filing an appeal to CORC, having done so two times, regarding different subjects, and having written to CORC a third time about a perceived failure to respond to an appeal; (2) the assault is alleged to have occurred on April 4, 2006, at Clinton C.F.; (3) at the time, Plaintiff was housed in the Clinton C.F. Special Housing Unit ("SHU"), where paper and grievance forms were available to him; (4) on or about April 7, 2006, Plaintiff had Office of Mental Health ("OMH") Social Worker Todd Asselin hand-deliver a letter to OMH Unit Chief

4

Maureen Bosco complaining of the alleged assault; (5) on or about April 12, 2006, Plaintiff was

transferred to the Clinton C.F. Mental Health Center for observation; (6) on or about April 19,

2006, Plaintiff was transferred to the Central New York Psychiatric Center ("CNYPC"), where

he orally complained of the alleged assault to a risk management specialist on or about April 21,

2006; (7) on or about April 24, 2006, Plaintiff's complaint of an alleged assault was referred to

the New York State Department of Correctional Services Inspector General's Office ("IG") for

an investigation; (8) the investigation was conducted by IG Senior Investigator Anthony

Misercola; (9) on or about May 17, 2006, Plaintiff was transferred to Downstate Correctional

Facility, and the next day to Great Meadow Correctional Facility; and (10) on or about

September 20, 2006, after the IG's investigation was over, the IG concluded that Plaintiff's

allegations were unsubstantiated. (*Id*.)

## II.    RELEVANT LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring

suit in federal court must first exhaust their available administrative remedies: "No action shall

be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e.  The PLRA was enacted "to reduce the quantity and improve the

quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address

complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S.

516, 524-25 (2002).  In this regard, exhaustion serves two major purposes.  First, it protects

"administrative agency authority" by giving the agency "an opportunity to correct its own

mistakes with respect to the programs it administers before it is haled into federal court, and it

5

discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[1] First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[2] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a

---

[1]     *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

[2]     The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

certain number of days of the conclusion of the hearing.  Second, a grievant may appeal the

IGRC decision to the facility's superintendent within a certain number of days of receipt of the

IGRC's written decision.  The superintendent is to issue a written decision within a certain

number of days of receipt of the grievant's appeal.  Third, a grievant may appeal to the central

office review committee ("CORC") within a certain number of days of receipt of the

superintendent's written decision.  CORC is to render a written decision within a certain number

of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate

harassment or other misconduct by corrections officers or prison employees.  7 N.Y.C.R.R. §

701.8.  In the event the inmate seeks expedited review, he or she may report the misconduct to

the employee's supervisor.  The inmate then files a grievance under the normal procedures

outlined above; however, all grievances alleging employee misconduct are given a grievance

number, and sent immediately to the superintendent for review.  The superintendent or his

designee shall "promptly determine whether the grievance, if true, would represent a bona fide

case of harassment," and if so, then the superintendent shall initiate an investigation of the

complaint, either "in-house," by the Inspector General's Office, or by the New York State Police

Bureau of Criminal Investigations.  An appeal of the adverse decision of the superintendent may

be taken to the CORC as in the regular grievance procedure.

It is important to note that these procedural requirements contain certain safeguards.  For

example, if an inmate could not file such a complaint within the required time period after the

alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the

time limit based on mitigating circumstances.  If that application was denied, the inmate could

file a complaint complaining that the application was wrongfully denied.[3]

Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.[4]  There appears to be a conflict in case law regarding whether the IGRC's or superintendent's non-response must be appealed to the next level where the inmate's grievance was never assigned a grievance number.[5]  After carefully reviewing this case law, the Court finds that the weight of authority persuasively answer this question in the affirmative.[6]  The Court notes that, if the inmate adequately describes, in his appeal to the

---

[3]     *See Murray v. Palmer*, 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

[4]     7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray v. Palmer*, 03-CV-1010, 2010 WL 1235591, at *2 & n.4 (N.D.N.Y. March 31, 2010) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.") [collecting cases]; *see also Williams v. Hupkowicz*, 04-CV-0051, 2007 WL 1774876, at *4 (W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA.").

[5]     *Murray,* 2010 WL 1235591, at *2 & n.5 [citing cases].

[6]     *See*, *e.g.*, *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *15, 18 & n.46 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("[E]ven if Great Meadow C.F. did not (during the time in question) have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level."), *accord*, *Midalgo v. Bass*, 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available to him where his grievance of March 20, 2004, was not assigned a grievance number); *Wesley v. Hardy*, 05-CV-

superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that there is something for the superintendent to review.

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Porter*, 534 U.S. at 524). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have

6492, 2006 WL 3898199, at *4 (S.D.N.Y. Dec. 12, 2006) ("If a prisoner submits a grievance and receives no response, he cannot be considered to have been actively obstructed or frustrated, as he is free to appeal to the next level of review."), *accord*, *Walters v. Carpenter*, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004); *Veloz v. New York*, 339 F. Supp.2d 505, 515-16 (S.D.N.Y.2004) (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because, *inter alia*, he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *Hernandez v. Coffey*, 99-CV-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) (rejecting plaintiff's argument that he could not have exhausted because he never received a grievance number, finding he could nonetheless have appealed any such non-response to the next level); *Reyes v. Punzal*, 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002) ("Had plaintiff utilized this procedure, any failure by Artuz to render a decision on his matter within twelve working days could have been appealed to Albany, thus completing the grievance cycle and exhausting his remedies in a matter of weeks."), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *cf. Hernandez v. Coffey*, 582 F.3d 303, 305, 309, n. 3 (2d Cir.2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

Finally, two points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F. 3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies.[7] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by showing exhaustion, unavailability, estoppel, or "special circumstances."[8] As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

---

[7]      *Murray,* 2010 WL 1235591, at *4 [citation omitted].

[8]      *Id.* at *4 & n.17 [collecting cases].

## III.   ANALYSIS

As an initial matter, the Court finds, after carefully considering the matter, that, before filing this action, Plaintiff did not exhaust his administrative remedies.  For example, Plaintiff did not file a harassment grievance and then either (1) receive a decision on that grievance or (2) appeal the denial of, or non-response to, that grievance to CORC.  The Court bases this finding on the following: (1) the conspicuous omission of any reference to the grievance process in Plaintiff's otherwise detailed verified Complaint; (2) DOCCS' log of Plaintiff's grievances while at Clinton C.F.; (3) DOCCS' log of Plaintiff's grievance appeals to CORC; (4) the hearing testimony of Grievance Supervisor Christine Gregory; (5) the hearing testimony of Legal Office Liaison Tammy Irwin; and (6) the hearing testimony of Inmate Grievance Program Director Karen Bellamy.  (Dkt. No. 1; Hrg. Exs. D-3E, D-4E; Hrg. Transcript, at 34-105.)[9]

As a result, the Court turns its attention to three-part inquiry established by the Second Circuit for exhaustion of administrative remedies under the PLRA.  As the Court indicated above in Part I of this Decision and Order, even when liberally construed, Plaintiff's pre-trial brief and hearing summation do not take issue with either parts one or two of that three-part inquiry;

---

[9]     The Court rejects as incredible Plaintiff's claim that, at some point in time during his stay at the CNYPC (i.e., between April 19, 2006, and May 17, 2006), he sent a letter to the Inmate Grievance Program Director Thomas Egan, who returned to Plaintiff a copy of that letter with the word "received" stamped on it, based on (1) Plaintiff's hearing testimony and demeanor during that testimony, and (2) the conspicuous absence of that copy in the record (despite Plaintiff's claim that he possesses it).  (Hrg. Transcript at 117-121; *see* Hrg. Exs.)  In any event, and more importantly, because there had been no referral to the IG by Superintendent Artus, such a letter, which preceded the conclusion of the IG investigation by more than four months, could not have constituted an "appeal" from that investigation to CORC.  Even if there had been a referral to the IG by Superintendent Artus, Plaintiff's letter to Director Egan would not have been an "appeal" for two independent reasons: (1) it was untimely because it appears to have been submitted more than four working days after that referral on April 24, 2006 (and Plaintiff's knowledge of the referral through his being interviewed by IG Senior Investigator Anthony Misercola on the same day); and (2) in any event, it was never actually *decided* by CORC, but (purportedly) stamped "received" by Director Egan with the advice that Plaintiff file a grievance.

rather, they take issue only with part three of that inquiry. (*See generally* Dkt. No. 68; Hrg. Transcript, at 129-131.) However, in the interest of thoroughness, and to give context to the Court's analysis regarding step three of that inquiry, the Court will analyze all three steps.

### A.   Availability of Administrative Remedies

With regard to part one of the Second Circuit's three-part exhaustion inquiry, the Court finds, after carefully considering the matter, that administrative remedies were in fact available to Plaintiff during the time in question.

More specifically, during the time in question, Plaintiff had 14 days after the alleged assault (i.e., until April 18, 2006) to file a grievance at Clinton C.F. He could have done this by receiving a grievance form or piece of plain paper from a grievance housing specialist during his or her rounds or upon Plaintiff's request, and then handing a completed grievance form or simple letter of complaint written on plain paper (or even a napkin) to a grievance housing specialist or an SHU correctional officer during his or her rounds for delivery to the grievance clerk for filing, on any day between April 4, 2006, and April 18, 2006 (when he was transferred to the CNYPC). While Plaintiff could have preceded this filing with the sending of a letter to his assailant's supervisor (in an effort to informally resolve the matter before filing), he need not have done so. Alternatively, after he was transferred to the CNYPC on April 19, 2006, he could have written a letter to the grievance clerk at Clinton C.F. requesting an exception to the deadline of April 18, 2006, based on mitigating circumstances (e.g., his poor mental health and his transfer to the Clinton C.F. Mental Health Center for observation). The Court bases these findings on the following: (1) the hearing testimony of Grievance Sergeant Scott McClean; (2) the hearing testimony of Inmate Grievance Program Director Karen Bellamy; (3) the hearing testimony of Plaintiff; (4) the version of DOCs Directive 4040 in effect during the time in question; and (5)

the relevant case law.  (Hrg. Transcript, at 2-34, 58-88, 106-121; Hrg. Ex. D-2E [attaching version of Directive 4040 dated July 12, 2006, which Sgt. McClean testified was "very, very close" to the version in effect before July 12, 2006].)[10]

Once his grievance was received, it would have been deemed to have been a harassment grievance and would have been forwarded directly to the Superintendent by the close of that business day.  The Superintendent then would have had 12 working days in which to respond, unless he requested (and obtained Plaintiff's consent for) an extension of the response deadline, due to additional time needed for the completion of (1) an in-house investigation, (2) an investigation by IG, or (3) an investigation by the State Police.  The Court bases these findings on the following: (1) the hearing testimony of Grievance Sergeant Scott McClean; (2) the hearing testimony of Inmate Grievance Program Director Karen Bellamy; (3) the version of DOCs Directive 4040 in effect during the time in question; and (4) the relevant case law.  (Hrg. Transcript, at 2-34, 58-88; Hrg. Ex. D-2E.)[11]

_____

[10]     *See also Hale v. Rao*, 768 F. Supp.2d 367, 376, n.5 (N.D.N.Y. 2011) (Hurd, J.) ("This requirement [that a grievance be filed within 14 days of the incident] was amended on July 12, 2006, by another DOCS directive that extended the deadline to within 21 days of the incident."); *Barnes v. Craft*, 04-CV-1269, 2007 WL 1017307, at *4 (N.D.N.Y. March 30, 2007) (Report-Recommendation of Lowe, M.J., adopted by Mordue, C.J.) (finding that the deadline for filing a grievance, for incident occurring on March 12, 2004, was 14 days of the incident); *Carini v. Austin*, 06-CV-5652, 2008 WL 151555, at *1 & n.3 (S.D.N.Y. Jan. 14, 2008) (finding that the deadline for filing a grievance, for incident occurring on August 1, 2003, was 14 days of the incident).

[11]     *See also Rodriguez v. Mount Vernon Hosp.,* 09-CV-5691, 2010 WL 3825736, at *10 & n.14 (S.D.N.Y. Sept. 7, 2010) ("The pre-2006 version of the regulations allowed the Superintendent 12 working days to render a decision [to a harassment grievance], as opposed to 25 calendar days under the current regulation."), *adopted by* 2010 WL 3825715 (S.D.N.Y. Sep 30, 2010); *Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *4 (N.D.N.Y. May 5, 2007) (Report-Recommendation of Peebles, M.J., adopted by Scullin, J.) (finding that the deadline for a superintendent's response to a harassment grievance filed on July 7, 2004, was 12 working days of receipt of the grievance); *Hairston v. LaMarche*, 05-CV-6642, 2006 WL 2309592, at *1, 7 (S.D.N.Y. Aug. 10, 2006) (finding that the deadline for a superintendent's response to a harassment grievance filed on June 18, 2004, was 12 working days of receipt of the grievance).

After 12 working days, if his grievance was either denied or not responded to (and no extension was requested by the Superintendent and consented to by Plaintiff), Plaintiff had four working days in which to appeal the Superintendent's denial of, or non-response to, that grievance to CORC.  Alternatively, if the Superintendent sought an extension of his response deadline pending an investigation (e.g., by the IG), Plaintiff had four working days after the new response deadline in which to appeal the Superintendent's denial of, or non-response to, that grievance to CORC (assuming the grievance was not granted).  In either case, he could have filed his appeal, and/or sought an extension of the deadline in which to do so, even if he had been transferred from the facility.  The Court bases these findings on the following: (1) the hearing testimony of Inmate Grievance Program Director Karen Bellamy; (2) the version of DOCs Directive 4040 in effect during the time in question; and (3) the relevant case law.  (Hrg. Transcript, at 58-88; Hrg. Ex. D-2E.)[12]

During the time in question, Plaintiff knew all of this, (1) having received an SHU Inmate Orientation Manual describing his access to the inmate grievance mechanism, (2) having been incarcerated in DOCS 16 years at that point, having previously filed two appeal to CORC (and a third letter to CORC regarding a perceived non-response to an appeal), and (3) admittedly having a "good understanding" of the grievance process.  The Court bases these findings on the following: (1) the hearing testimony of Grievance Sergeant Scott McClean; (2) the SHU Inmate Orientation Manual; (3) the hearing testimony of Inmate Grievance Program Director Karen Bellamy; (4) DOCCS' log of Plaintiff's grievance appeals to CORC; and (5) the hearing

_____

[12]       *See also Rodriguez,* 2010 WL 3825736, at *10 & n.15 ("The pre-2006 version of the regulations required that appeals [from the response to a harassment grievance] be filed within four working days of receipt of the response, as opposed to seven working days under current law."); *Rhodes*, 2007 WL 1343649, at *4 (finding that the deadline for an inmate's appeal to CORC from a superintendent's response to a harassment grievance, as of July 7, 2004, was four working days of receipt of the response).

14

testimony of Plaintiff.  (Hrg. Transcript, at 2-34, 58-88, 106-121; Hrg. Exs. D-4E, D-8E.)

The Court would add only that it specifically finds that, during the time in question, an inmate could file an extension request and letter of complaint regarding an assault at Clinton C.F. while confined at the CNYPC, by mailing them there on plain paper.  Granted, during the time in question, some transferred inmates' grievances of assault could *conceivably* have been denied as moot by *the IGRC* (and any appeal precluded)–if *the IGRC* determined that the grievance affected *only the specific grievant* as opposed to other members of the facility.  *See* 7 N.Y.C.R.R. § 701.3(k)(2)(i),(ii) (version in effect in April 2006) ("If the IGRC majority determines that the [institutional] grievance is moot because it only affects the specific grievant . . . , the IGRC shall dismiss and close the grievance. . .  If the grievance does affect other members of the facility population . . . , the IGRC shall provide a recommendation or how to resolve the matter and forward the case to the superintendent for a determination.").[13]  However, such a possibility does not render those inmates' administrative remedies unavailable to them.[14]

---

[13]      It bears noting that 7 N.Y.C.R.R. § 701.3(k)(2) was amended on June 13, 2006, so as to make it easier for an inmate to file a grievance from another facility.  *See* 7 N.Y.C.R.R. § 701.6(h) (providing that "[a]n inmate transferred to another facility may continue an appeal of any grievance," and providing specific instructions on how to do so).  Here, the relevant time period is before June 13, 2006.

[14]      *See Finger v. Superintendent McFinnis*, 99-CV-9870, 2004 WL 1367506, at *4 (S.D.N.Y. June 16, 2004) ("Plaintiff's perception of the unavailability of grievance procedures following transfer from a facility in which an incident occurred is inconsistent with the DOCS regulations, which provide that "[a]n institutional grievance brought by an inmate who was transferred, released, or paroled must be investigated and brought to an [Inmate Grievance Review Committee (IGRC) ] hearing" at the complainant's original facility. 7 N.Y.C.R.R. § 701.3(k)(2). Thus, removal from the facility where the alleged assault took place does not render grievance procedures unavailable."); *accord, Carini v. Austin*, 06-CV-5652, 2008 WL 151555, at *4 (S.D.N.Y. Jan. 14, 2008) (holding inmate's transfer from one DOCS facility to another in 2003 did not preclude him from filing a grievance at the original facility); *Sims v. Blot*, 00-CV-2524, 2003 WL 21738766, at *4 (S.D.N.Y. July 25, 2003) ("The fact that plaintiff was moved from Sing Sing to the Auburn Correctional Facility does not, however, relieve him of the obligation to exhaust his administrative remedies in the facility where the incident occurred."); *Santiago v. Meinsen*, 89 F. Supp.2d 435, 440-41 (S.D.N.Y. 2000) (holding inmate's transfer from one DOCS facility to another in does not relieve him from his duty to file a grievance at the original facility).

In any event, and more important, where, as here, the assault was of a sexual nature, the grievance would have been deemed to be a harassment grievance, and would have been forwarded directly and promptly to the superintendent.  (Hrg. Transcript at 11, 18, 20-21, 26, 29, 40-41, 48, 64, 74-75; Hrg. Ex. D-2E.)

 **B.  Estoppel**

 With regard to part two of the Second Circuit's three-part exhaustion inquiry, the Court finds, after carefully considering the matter, that Defendants did nothing to estop themselves from asserting the affirmative defense of failure to exhaust administrative remedies.[15]

 While Plaintiff testified that he was scared following the alleged assault, the Court does not find that testimony credible.  Even if the Court were to find that testimony credible, the Court would find that Plaintiff did not credibly testify–or indeed any way testify–that Defendants actually said anything to make him scared.  The Court bases this finding on the following: (1) Plaintiff's criminal history as a sex offender and disciplinary history; (2) the fact that he purportedly tried to submit a grievance and two letters of complaint (one to the Superintendent and the other to OMH Unit Chief Maureen Bosco) a mere two days after the alleged assault; (3) the fact that he succeeded in hand-delivering a letter of complaint to OMH Social Worker Todd Asselin, for hand-delivery to Maureen Bosco, a mere three days after the alleged assault; and (4) the nature of Plaintiff's hearing testimony and his demeanor during that testimony.  (Hrg. Transcript at 99-100, 106-121; Hrg. Exs. D-6E, D-10E, D-11E.)

 Similarly, while Plaintiff testified that his free flow of mail was interfered with during the two days following the alleged assault, the Court does not find that testimony credible.  Even if

---

  [15]  Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.  *Murray,* 2010 WL 1235591, at *5 & n.26 [collecting cases].

the Court were to find that testimony credible, the Court would find that Plaintiff did not credibly testify–or indeed any way testify–that Defendants did anything to interfere with that mail. The Court bases this finding on the following: (1) the conspicuous absence of copies of the three pieces of mail in the record, (2) the hearing testimony, and investigative file, of IG Investigator Anthony Misercola; and (3) the nature of Plaintiff's hearing testimony and his demeanor during that testimony. (Hrg. Transcript at 88-121; Hrg. Exs. D-7E, D-10E.)

Finally, even if the Court were to find that Plaintiff was effectively prevented by Defendants from filing a grievance while he was at Clinton C.F., the Court would find that he was not prevented by Defendants (or anyone) from filing that grievance (or pursuing the appeal process) once he was transferred from Clinton C.F. The Court bases this finding on the following: (1) the hearing testimony of Grievance Sergeant Scott McClean; (2) the hearing testimony of Inmate Grievance Program Director Karen Bellamy; (3) the nature of Plaintiff's hearing testimony and his demeanor during that testimony; and (4) the version of DOCs Directive 4040 in effect during the time in question. (Hrg. Transcript at 2-34, 58-88, 106-121; Hrg. Ex. D-2E.) *See also* Part III.A. of this Decision and Order.

### C.    Special Circumstances

With regard to part three of the Second Circuit's three-part exhaustion inquiry, as stated above in Part I of this Decision and Order, liberally construed, Plaintiff's pre-trial brief and hearing summation argue that the special circumstances consist of a combination of some or all of the following six circumstances: (1) the purported fact that (due to fear of reprisal) his speech was chilled, or at least he was hopelessly distracted, while he was at Clinton C.F. following the alleged assault; (2) the purported fact that his mail was interfered during the two days following the alleged assault; (3) the purported fact that, procedurally, he could not file a formal grievance

17

at Clinton C.F. after he was transferred from there; (4) the fact that his hand-delivered letter to Maureen Bosco, which was brought to the attention of Clinton C.F. Deputy Superintendent of Security Jeff Tedford and referred by him to the IG, was effectively treated as a harassment grievance; (5) the purported fact that an appeal to CORC would have been futile under the circumstances because CORC would merely have "rubber stamp[ed]" the IG's conclusion that Plaintiff's claims were unsubstantiated; and (6) the purported fact that the IG investigation achieved the same purpose as pursuing the grievance process.  (*See generally* Dkt. No. 68; Hrg. Transcript, at 129-131.)  After carefully considering the matter, the Cour rejects those circumstances (as grounds to excuse the exhaustion requirement), both individually and in their totality.

### 1.    First, Second and Third Circumstances Asserted by Plaintiff

With regard to the first two circumstances asserted by Plaintiff, the Court rejects those circumstances (as grounds to excuse the exhaustion requirement) for the reasons stated above in Part III.B. of this Decision and Order.  With regard to the third circumstance, the Court rejects that circumstance (as a ground to excuse the exhaustion requirement) for the reasons stated above in Part III.A. of this Decision and Order.

### 2.    Fourth Circumstance Asserted by Plaintiff

With regard to the fourth circumstance asserted by Plaintiff (i.e., that his hand-delivered letter to Maureen Bosco, which was brought to the attention of Deputy Superintendent of Security Tedford and referred by him to the IG, was effectively treated as a harassment grievance), at the end of the exhaustion hearing the Court indicated that it was preliminarily finding that it agreed with Plaintiff that the letter was effectively a harassment grievance. However, after carefully reconsidering the matter, the Court now disagrees with Plaintiff.

18

Section 701.8(d) of Directive 4040 expressly states that the request for an IG investigation (of a bona fide harassment issue) must directly come from "the superintendent." To liberally construe that term as meaning "the superintendent or his/her designee" would be to blatantly ignore the fact the preceding subsection, Section 701.8(c), intentionally uses the term "the superintendent or his/her designee," rendering that term's absence from Section 701.8(d) conspicuous.  While the Court has not found any case law discussing the rationale for limiting the referral power to the superintendent, the Court imagines the rationale has to do with (1) the fact the time and expense of an IG investigation is not something that should be requested casually, and (2) the fact that limitation ensures that the superintendent has notice of the matter sufficient for him to render a decision to the grievant either before or after the IG investigation. This last fact is significant in this case, given that Legal Office Liaison Tammy Irwin testified that her review of Superintendent Artus' files revealed no indication that he knew of either Plaintiff's complaint or the referral *before* the referral occurred.  (Hrg. Transcript at 51-58; *see* Hrg. Ex. P.9 at 55 [merely consisting of a fax from the IG to Superintendent Artus indicating that an interview would be conducted of Defs. Renadette but not stating Plaintiff's name and in any event being dated May 5, 2006, eleven days after the IG's investigation had begun].)  This is not surprising because it appears that the referral to the IG came from Deputy Superintendent of Security Tedford, not from Superintendent Artus.  (Hrg. Transcript at 90-92; Hrg. Exs. P-9, P-13.)[16]

---

[16]      The Court rejects as incredible Plaintiff's claim that he sent a separate letter of complaint directly to Superintendent Artus, based on (1) Plaintiff's hearing testimony and demeanor during that testimony, and (2) the conspicuous absence of a copy of that letter in the record (despite Plaintiff's claim that he possesses it).  (Hrg. Transcript at 117-121; *see* Hrg. Exs.) In any event, and more importantly, Plaintiff claims Superintendent Artus never received that letter.  (Hrg. Transcript at 117-120.)

District courts appear to uniformly agree that, without a referral from a superintendent, an IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement; rather, the inmate must still appeal the IG's conclusion of unsubstantiation to CORC.[17]  This is because Section 701.1(b) of the governing regulations explains that "[the inmate grievance] program is intended to supplement, not replace, existing formal or informal channels of problem resolution as set forth in section 701.3(a) of this Part."  7 N.Y.C.R.R. § 701.1(b).[18]  As a result, the Second Circuit has held that the "[r]esolution of a

---

[17]       *See, e.g., Stephenson v. Dunford,* 320 F. Supp.2d 44, 46, 52 (W.D.N.Y. 2004) finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by Inspector General), *vacated on other grounds*, 139 F. App'x 311 (2d Cir. 2005); *Johnson v. Fernandez,* 09-CV-0626, 2011 WL 7629513, at *5 (N.D.N.Y. March 1, 2011) (Baxter, M.J.) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by Inspector General), *adopted by* 2012 WL 1033652 (N.D.N.Y. Mar 27, 2012) (Scullin, J.); *Jacoby v. Phelix,* 07-CV-0872, 2010 WL 1839299, at *8-9 &n.15 (N.D.N.Y. March 31, 2010) (Baxter, M.J.) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by Inspector General), *adopted by* 2010 WL 1839264 (N.D.N.Y. May 06, 2010) (Hurd, J.); *Thomas v. Cassleberry,* 315 F. Supp.2d 301, 303-04 (W.D.N.Y.2004) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following "investig[ation] by [the] Inspector Gen[eral]"); *McNair v. Jones,* 01-CV-3253, 2002 WL 31082948 at *4, 8 (S.D.N.Y. Sept. 18, 2002) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by Inspector General); *Houze v. Segarra,* 217 F. Supp.2d 394, 395-96 (S.D.N.Y.2002) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following IG's investigation and finding that there was "no merit to [the inmate's] allegations"); *Grey v. Spearhawk,* 99-CV-9871, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (rejecting inmate's argument that "the Inspector General's investigation, if any, into the matter exhausts the administrative procedures"); *cf. Tapp v. Kitchen,* 02-CV-6658, 2004 WL 2403827, at *8 (W.D.N.Y. Oct. 26, 2004) ("Plaintiff's argument in this regard is further undercut by the fact that he never followed up on his complaint to the Inspector General after he failed to receive any kind of a decision."); *Velez v. Kulhmann,* 02-CV-6062, 2003 WL 22004899, at *3 (S.D.N.Y. Aug. 22, 2003) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following his complaint to an IG investigator).

[18]       Section 701.3(a) provides that "[a]n inmate is encouraged to resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance."  7 N.Y.C.R.R. § 701.3(a).

matter through informal channels satisfies the exhaustion requirement . . . ."  *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001) (citing 7 N.Y.C.R.R. § 701.1).[19]  District courts have interpreted this holding to mean that an inmate's efforts to resolve a matter through informal channels satisfies the exhaustion requirement only if the efforts resulted in the matter being concluded *in the inmate's favor*.[20]  Generally, those district courts reason that, when a matter has been concluded in the inmate's favor, it has been resolved (for purposes of his available exhaustion remedies), because nothing exists from which the inmate can appeal.[21]  Conversely, those district courts reason that, where informal efforts to resolve a matter have not resulted in the conclusion of the matter in the inmate's favor, the matter has not been resolved for purposes of his available exhaustion remedies, because he can still pursue the grievance process.[22]

---

[19]     *Accord, Perez v. Blot*, 195 F. Supp.2d 539, 545-46 (S.D.N.Y. 2002) ("As in *Marvin*, the Plaintiff here also contends that he successfully obtained as favorable a resolution to his grievance as possible after he complained about the assault to 'correctional officials.' . . .  If the discovery requested in this instance ultimately supports Plaintiff's allegations, he may be able to establish that he resolved his grievance through precisely the type of informal channels which are permitted under both *Marvin* and the New York administrative scheme.").

[20]     *See, e.g., Thomas v. Cassleberry*, 315 F. Supp.2d 301, 304 (W.D.N.Y. 2004) ("Both *Perez* and *Marvin*, then, merely stand for the proposition that a grievance through informal channels satisfies the exhaustion requirement if the prisoner thereby obtained a favorable resolution of his grievance.") (internal quotation marks omitted); *Muhammad v. Pico*, 02-CV-1052, 2003 WL 21792158, at *8, n.23 (S.D.N.Y. Aug. 5, 2003) ("Here, there is no evidence in the record that Muhammad's informal complaints resolved matters in his favor, and so *Marvin* is inapplicable."); *Nelson v. Rodas*, 01-CV-7887, 2002 WL 31075804, at *3 n.9 (S.D.N.Y. Sept. 17, 2002) ("Contrary to the dicta in *Perez v. Blot*, 195 F. Supp.2d 539, 544–46 (S.D.N.Y.2002), this Court construes *Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir.2001), as holding merely that a grievance through informal channels satisfies the exhaustion requirement if the prisoner thereby obtained a favorable resolution of his grievance.").

[21]     *Abney v. McGinnis*, 380 F.3d 663, 229 (2d Cir. 2004); *Andrews v. Cruz*, 2010 WL 1141182, at *6 (S.D.N.Y. Mar. 24, 2010).

[22]     *See* 7 N.Y.C.R.R. § 701.3(a) ("An inmate is encouraged to resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) *prior to submitting a grievance*.") (emphasis added); *cf.*

In any event, even if the letter was effectively a harassment grievance (that reached Superintendent Artus), that fact would not serve as a special circumstance justifying Plaintiff's failure to exhaust his available administrative remedies, because (following a denial of, or non-response to, that harassment grievance) an appeal to CORC was still possible.  *See, supra,* Part II of this Decision and Order.  (*See also* Hrg. Transcript at 31-32, 75-77, 83-85).[23]

Granted, some disagreement exists whether a harassment grievant must appeal to CORC where the IG's finding of unsubstantiation *follows a referral by a superintendent.*   Some cases reason that, because a superintendent's referral to the IG must be preceded by a finding that *if true* the grievance would represent bona fide case of harassment, when such a referral occurs the grievant has received at least "partial favorable relief."[24]   However, these cases inexplicably ignore the fact that the IG has subsequently found that the grievance is *not true.*   It is difficult to

---

*See Percinthe v. Julien*, 08-CV-0893, 2009 WL 2223070, at *2 (S.D.N.Y. July 24, 2009) (indicating that inmate filed appeal to CORC following a finding of unsubstantiation by IG); *Ortiz v. Skinner*, 00-CV-07220, 2004 WL 2091994, at *1-2 (W.D.N.Y. Sept. 16, 2004) ("Director Eagen explains that 'if an inmate or someone on the inmate's behalf complains to the Office of the Inspector General, but the inmate does not file a grievance, the matter is never filed as a grievance and it cannot be appealed to CORC. Of course, the inmate can do both. However, if the inmate chooses to submit a complaint to the Office of the Inspector General and not to file a grievance, then the procedures set forth in Part 701 of Title 7 NYCRR and Directive # 4040 have been completely bypassed, and the inmate has not availed himself or herself of the IGP.' . . .").

[23]     *See also Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) (stating that inmate was able to file appeal to CORC following his receipt of a superintendent's response that he was forwarding of the grievance to IG for investigation); *Percinthe*, 2009 WL 2223070, at *2 (indicating that inmate was able to file appeal to CORC following a finding of unsubstantiation by IG, after "[t]he Inmate Grievance Program reported the incident to the Inspector General's office for investigation").

[24]     *See, e.g., Andrews v. Cruz,* 04-CV-0566, 2010 WL 1142010, at *4-5 (S.D.N.Y. March 9, 2010); *Pagan v. Brown*, 08-CV-0724, 2009 WL 2581572, at *7-8 (N.D.N.Y. Aug. 19, 2009) (Kahn, J., adopting Report-Recommendation of DiBianco, M.J.); *Lawyer v. Gatto*, 03-CV-7577, 2007 WL 549440, at *8 (S.D.N.Y. Feb. 21, 2007); *Hairston v. LaMarche*, 05-CV-6642, 2006 WL 2309592, at *9 (S.D.N.Y. Aug. 10, 2006).

understand how a plaintiff can be found to have received "partial favorable relief" in a case based on his mere statement of an actionable claim, where that claim has been dismissed for lack of evidence.  Not surprisingly, the Second Circuit has expressly recognized that a superintendent has neither granted nor denied a grievance where he has simply forwarded it to the Inspector General's office for investigation.  *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) ("On July 11, 2003, the superintendent responded, neither granting nor denying the grievance, stating only, 'Your grievance has been forwarded to the Inspector General's office for further investigation.'").

After carefully reviewing the relevant case law, the Court finds that the better-reasoned cases answer this question in the affirmative: a harassment grievant must appeal to CORC even where the IG's finding of unsubstantiation follows a referral by a superintendent.  *See, e.g., Torres v. Carry*, 672 F. Supp.2d 338, 343-44 (S.D.N.Y. 2009) (finding no exhaustion where [1] inmate received response from superintendent informing him that the Inspector General's Office was investigating the matter, [2] he subsequently received neither an investigative report from the Inspector General's Office nor a further response from the superintendent, and [3] he never completed the exhaustion process by receiving a response from CORC, as required by the regulations); *see also, supra*, note 17 of this Decision and Order.  This conclusion is also supported by the hearing testimony adduced in this case.  (Hrg. Transcript at 31-32, 75-77, 83-85.)

Here, Plaintiff never filed any such appeal, either after any referral to the IG or after the conclusion of the IG's investigation.  *See, supra,* note 9 and accompanying analysis in Part III of this Decision and Order.  (*See also* Hrg. Transcript at 67-71; Hrg. Ex. D-4E.)  It is important to note that Plaintiff received notice of the conclusion of the IG's investigation.  (Hrg. Transcript at 114.)

For all of these reasons, the Court rejects (as a ground to excuse the exhaustion requirement) the fourth circumstance relied on by Plaintiff.

### 3.      Fifth Circumstance Asserted by Plaintiff

With regard to the fifth circumstance asserted by Plaintiff (i.e., the purported fact that an appeal to CORC would have been futile under the circumstances because CORC would merely have "rubber stamped" the IG's conclusion that Plaintiff's claims were unsubstantiated), the Court finds that it would *not* have been futile to file an appeal with CORC under the circumstances.  The Court bases this finding on the following: (1) the hearing testimony of Inmate Grievance Program Director Karen Bellamy; (2) the version of DOCs Directive 4040 in effect during the time in question; and (3) cases requiring an appeal to CORC following an conclusion of unsubstantiation by the IG.  (Hrg. Transcript at 58-88; Hrg. Ex. D-2E.) *See also, supra,* Part III.C.2. of this Decision and Order.

Granted, at the hearing, Inmate Grievance Program Director Bellamy testified that, if a complaint is found by the IG to be unsubstantiated, then "we kind of . . . go with that" on appeal. (Hrg. Transcript at 77.)  However, taken in its totality her hearing testimony explains as follows: (1) the coordinators in her office at CORC only "*probably* go down to the IG's office" and get information that they "go with"; (2) whether they "go with" the results of the IG's investigation "*depends*"; and (3) even if they "go with" the results of the IG's investigation, a separate investigation may still be conducted.  (Hrg. Transcript at 77, 87 [emphasis added].)  This is not surprising given that it strains credulity to believe that, if an IG report were perceived to be deficient by CORC, the inmate's appeal would perfunctorily be denied.  Indeed, the added layer of review by CORC is the very reason cases hold that, following an conclusion of unsubstantiation by the IG, an appeal to CORC is required in order to exhaust.  *See, supra,* Part III.C.2. of this Decision and Order (citing cases).  In short, the authority of CORC to depart from

the result of an IG investigation is the very thing that requires Plaintiff to appeal to CORC to complete the exhaustion process.

It is important to note that district courts have rather uniformly rejected arguments, and even testimony, that he need not have filed an appeal to CORC because doing so would have been futile. *See, e.g., White v. Ercole,* 06-CV-11361, 2009 WL 602890, at *2, 4 (S.D.N.Y. March 3, 2009) (rejecting as unpersuasive inmate's affirmation swearing that an appeal to CORC would have been futile); *Rodriguez v. Goord,* 05-CV-6131, 2008 WL 495514, at *4, 6 (W.D.N.Y Feb. 21, 2008) (rejecting inmate's argument that an appeal to CORC would have been futile); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *3, 5 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (rejecting inmate's argument that an appeal to CORC would have been futile); *Hill v. Chalanor,* 419 F. Supp.2d 255, 259 (N.D.N.Y. March 8, 2006) (Kahn, J.) ("If Plaintiff chooses to pursue said appeal to the CORC, he should be sure to contact whatever prison officials he must, and comply with all appeal procedures. Plaintiff must exhaust all available administrative remedies, even is such exhaustion would result in futility or ineffectiveness."); *Morrow v. Goord*, 03-CV-0713, 2005 WL 1159424, at *3 (W.D.N.Y. May 17, 2005) ("Morrow argues that it would be futile to exhaust his administrative remedy because CORC has already reviewed a similar grievance and that its decision is not likely to change. Futility, however, is not an exception to the PLRA's exhaustion requirement."); *Wagnoon v. Johnson,* 02-CV-10282, 2004 WL 583764, at *3 (S.D.N.Y. March 23, 2004) ("Plaintiff's apparent belief that the required appeal to CORC would ultimately be fruitless is insufficient to excuse nonexhaustion. Exhaustion of administrative remedies is required even if an inmate believes that such exhaustion would be futile.").[25] As United States District Judge Thomas J. McAvoy of this

---

[25]     *Cf. Davidson v. Talbot*, 01-CV-0473, 2005 WL 928620, at *8 (N.D.N.Y. Mar. 31, 2005) (Treece, M.J.) ("Exhaustion is similarly required even if the prisoner asserts futility as an

District explained in *Muniz v. Goord,*

> [In making his futility argument] Plaintiff confuses a prisoner's ability
> to appeal to CORC with a prisoner's chances of success during such an
> appeal. Simply because a prisoner might not stand a realistic chance of
> success during an appeal does not mean that the administrative
> appellate process is not 'available' to the prisoner. (If so, then any
> prisoner with an unmeritorious or frivolous claim would not have the
> administrative appellate process 'available' to him.)

*Muniz*, 2007 WL 2027912, at *5.

It is also important to note that, despite Plaintiff's argument, absolutely no hearing

testimony or exhibits were adduced establishing that futility was why he did not appeal to

CORC.  (*See* Hrg. Transcript, at 2-121; Hrg. Exs.)

For all of these reasons, the Court rejects (as a ground to excuse the exhaustion

requirement) the fifth circumstance relied on by Plaintiff.

### 4.      Sixth Circumstance Asserted by Plaintiff

With regard to the sixth circumstance asserted on by Plaintiff (i.e., the purported fact that

the IG investigation served the same purpose as the grievance process), based on the hearing

testimony exhibits, the Court finds that (1) as an initial matter, the purpose of the IG

investigation was materially different from the purpose of the grievance process (2) even if the

two purposes were the same, that fact does not excuse a failure to exhaust.  The Court bases this

finding on the following: (1) the hearing testimony of Inmate Grievance Program Director Karen

---

excuse."), *adopted by* 2006 WL 1877144 (N.D.N.Y. Jul 5, 2006) (Scullin, J.); *Williams v.
Comstock*, 03-CV-0782, 2004 WL 2646544, *2 (W.D.N.Y. Nov. 18, 2004) ("In the Second
Circuit, formal compliance with the IGP is required and an inmate must exhaust his
administrative remedies even if such exhaustion would be futile or ineffective."); *Arce v. Keane*,
01-CV-2648, 2004 WL 439428, at *5 (S.D.N.Y. March 9, 2004) ("[F]utility will not excuse an
inmate's failure to exhaust his administrative remedies."); *Petit v. Bender*, 99-CV-0969, 2003
WL 22743485, at *5 (S.D.N.Y. Nov. 19, 2003) ("In the Second Circuit, formal compliance with
the Inmate Grievance Program is required and an inmate must exhaust his administrative
remedies even if such exhaustion would be futile or ineffective.").

Bellamy; (2) the hearing testimony of IG Senior Investigator Anthony Misercola; (3) the letter of

complaint written by Plaintiff to OMH Unit Chief Maureen Bosco; (4) the investigative file of

IG Senior Investigator Anthony Misercola; (5) the version of DOCs Directive 4040 in effect

during the time in question; (6) cases requiring an appeal to CORC following an conclusion of

unsubstantiation by the IG; and (7) cases finding that futility does not relieve an inmate of the

duty to appeal to CORC.  (Hrg. Transcript at 58-105; Hrg. Exs. D-2E, D-6E, D-10E.)  *See also,*

*supra,* Parts III.C.2. and III.C.3. of this Decision and Order.

Based on the record evidence, it appears that, with regard to harassment grievances, the

focus of an IG investigation is on ascertaining the wrongdoing of a correctional employee for

purposes of *discipline*, while the focus of the grievance process is to provide an inmate a method

for *resolving* allegations of employee misconduct meant to annoy, intimidate or harm an inmate.

(Hrg. Transcript at 25, 29-30, 103; Hrg. Exs. D-2E, D-10E.)  Simply stated, the purpose of the

former is to determine whether to discipline an employee, while the purpose of the latter is to

determine whether to give relief to an inmate.  (*Id.*)  Indeed,  when asked to compare the two

things, Grievance Sergeant Scott McLean testified credibly that an "IG's investigation would

have nothing to do with mine"; similarly, Senior Investigator Anthony Misercola testified

credibly that "[m]y purview is sex crimes investigation.  What they do in grievance is separate

from me. . . .  My investigations have nothing to do with the grievance–they're two totally

separate processes. . . .  I've never been contacted by CORC regarding an appeal. They don't

have purview over my investigations."  (Hrg. Transcript at 25, 102-103, 105.)  This appears to be

the case here, where the relief requested in Plaintiff's grievance was essentially to ensure that he

would be kept apart from Defendants for the remainder of his incarceration at DOCCS, not the

disciplining of Defendants.  (Hrg. Ex. D-6E.)

In any event, even if the IG investigation served the same purpose as the grievance process, that fact would not relieve Plaintiff of the duty to file an appeal with CORC.  In addition to flying in the face of the plain language of DOCCs Directive 4040 and the hearing testimony of Scott McClean and Karen Bellamy, a contrary rule would undermine the cases holding that, following an conclusion of unsubstantiation by the IG, an appeal to CORC is required in order to exhaust.  *See, supra,* Part III.C.2. of this Decision and Order (citing cases).  A contrary rule would also undermine the cases holding that futility or ineffectiveness is not a ground for relieving an inmate of filing an appeal to CORC.  *See, supra,* Part III.C.4. of this Decision and Order.

For all of these reasons, the Court rejects (as a ground to excuse the exhaustion requirement) the sixth circumstance relied on by Plaintiff.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u> in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

Dated: September 25, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge